```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

MARLA GRAHAM,              )
                           )
        Plaintiff,         )
                           )
    v.                     )    No. 07 C 2634
                           )
UNITED PARCEL SERVICE,     )
                           )
        Defendant.         )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marla Graham ("Graham") has brought a complaint against her former employer, United Parcel Service ("UPS"), alleging that UPS discriminated against her, failed to reasonably accommodate her, and retaliated against her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 *et seq.* ("ADA"), and violated the Employee Retirement Income Security Act, 29 U.S.C. § 1132 *et seq.* ("ERISA") by terminating her in order to keep her from participating in its employee welfare, pension and health benefit programs. UPS has brought a motion to dismiss Graham's claims under various theories, and has also brought a motion to transfer this action to the Western Division of the Northern District of Illinois. For the following reasons, I deny both motions.

I.

Graham's complaint alleges that she was employed by UPS beginning in November of 1996. (Compl. ¶ 8.) In 2000 or 2001 she was diagnosed with epilepsy, and told UPS of this diagnosis. (*Id.*

at ¶ 11.) Graham took a brief period of physician-ordered leave, but subsequently returned to her job. (*Id.* at ¶ 12.) In June of 2004, she again took physician-ordered leave, and both her physician and her employer considered her disabled at that time. (*Id.* at ¶¶ 13-15.) When her physician allowed her to return to work under certain restrictions in February of 2005, UPS refused to allow her to return to work. (*Id.* at ¶ 16.) Each time her physician subsequently amended her medical limitations to attempt to allow her to return to work, UPS refused to accommodate the physician's recommended restrictions. (*Id.* at ¶¶ 17-20.) Graham alleges that although she could have performed her job with reasonable accommodation, UPS terminated her without justifiable cause. Graham has attached to her complaint a copy of the notice of right to sue letter she received from the Equal Employment Opportunity Commission ("EEOC") on February 12, 2007.

Graham brings claims for (1) violation of the ADA for receiving different treatment and being subject to adverse action because of her disability (Count I); (2) violation of the ADA for failing to reasonably accommodate her disability (Count II); (3) violation of the ADA for retaliation (Count III); and (4) violation of ERISA for terminating her in order to deprive her of participation in UPS's benefit programs (Count IV).

II.

To resolve UPS's motion to dismiss, I must accept all well-pled facts in Graham's complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to Graham. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of a claim is proper if Graham has not, at minimum, made enough factual allegations to raise a right to relief above a "speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citations omitted). In addition to the allegations contained in Graham's complaint, I may consider the attachments to the complaint. *See* FED. R. CIV. P. 10(c); *Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752 (7th Cir. 2001) (citation omitted). I may also consider Graham's EEOC charge, which UPS attaches to its motion to dismiss, because this is referred to in Graham's complaint and is central to her claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

III.

A.

UPS first argues that Graham's ADA claims (Counts I, II and III) are barred by the statute of limitations. Graham alleges that UPS first refused her request to return to work around February of 2005, and then refused to accommodate a series of amended

3

restrictions on or about May 17, 2005, July 29, 2005 and December 2, 2005. (Comp. ¶¶ 16-20.) UPS contends that because the first alleged denial of Graham's request to return to work was more than 300 days before she filed her EEOC charge, all of her ADA claims are barred. Graham responds that the continuing violation doctrine applies so that as long as the last complained-of violation occurred within 300 days, her claims are not barred.

Although the statute of limitations is an affirmative defense that a plaintiff normally need not anticipate or negate in a complaint, dismissal of a complaint is appropriate where a complaint reveals on its face that it is barred by the relevant statute of limitations. *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718-19 (7th Cir. 1993). As UPS notes, it is true that under the ADA a plaintiff must file an EEOC charge within 300 days of the discriminatory act about which she complains. 42 U.S.C. § 12117(a) (providing that the complaint procedures under Title VII, set forth in 42 U.S.C. § 2000e-5, apply to complaints under the ADA). Graham's EEOC charge was filed on May 10, 2006; the 300 day charging period began to run on July 13, 2005. This is well after the time that Graham alleges UPS first denied her reasonable accommodation, began retaliating against her, and discriminated against her in violation of the ADA, although it is before the last occasion on which Graham alleges such violations occurred.

The parties correctly recognize that the key question is whether, taking the facts as alleged in Graham's complaint as true, the continuing violation doctrine applies to her claims. In *Nat'l R.R. Passenger Corp. v. Morgan*, the Supreme Court addressed the continuing violation doctrine in the Title VII context.[1] 536 U.S. 101 (2002). It reviewed previous precedent on the continuing violation doctrine and distinguished the application of the doctrine to hostile work environment claims from its application to "discrete discriminatory acts." *Id.* at 113. Hostile work environment claims involve "repeated conduct" that only become actionable over time, so that any portion of the hostile work environment that occurs within the charging period renders the entire time period of the hostile work environment actionable. *Id.* at 115-17.

Discrete discriminatory acts are treated differently, however. Discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. The Supreme Court concluded that discrete discriminatory acts

> are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges

---

[1] The Seventh Circuit has concluded that the analysis of the continuing violation doctrine under the ADA is the same as the analysis of the doctrine under Title VII. *See, e.g.*, *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239-41 (7th Cir. 2004) (applying Title VII continuing violation precedent to an ADA claim).

5

> alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113; *see also Ledbetter v. The Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2169 (2007) (reaffirming *Morgan*). In *Ledbetter* the Supreme Court also reiterated that the "discrete act" to be evaluated for purposes of determining when the charging period begins is the act itself and not when the effects of that act are felt. 127 S. Ct. at 2169-71 (holding that allegations that employer violated Equal Pay Act triggered EEOC charging period when decision on salary level made, and not each time salary was paid).

UPS argues that it is clear from the face of the complaint that Graham alleges that UPS committed discrete discriminatory acts, and that the initial act occurred outside the charging period. It argues, citing *Stepney*, that any alleged subsequent acts were really just alleged failures to remedy the initial unlawful employment action, and are not themselves discrete actionable violations. 392 F.3d at 240 (citing *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992)). Graham argues that it is not clear from the face of the complaint whether

6

the continuing violation doctrine applies and, citing *Freeman v. Madison Metro. School Dist.*, 231 F.3d 374 (7th Cir. 2000) when Graham should have first been aware she was being discriminated against to toll the charging period. *See id.* at 381 (reviewing the continuing violation doctrine and noting that in situations where the doctrine applies the charging period does not begin to run until the employee knew an allegedly discriminatory decision had been made).

I agree with Graham that on the face of the complaint it is not clear whether the statute of limitation should toll in this case. It is not clear whether UPS's subsequent refusals to allow Graham to return to work were merely failures to remedy its initial purportedly discriminatory decision or new discrete acts of discrimination, so that even if some of these acts might be outside the charging period others might be within it. This is particularly true given that the complaint appears to allege that each time Graham approached UPS to ask to return to work she presented a different set of physician-ordered restrictions; it is not clear whether each determination of whether she could return to work constituted a separate discriminatory decision or was merely an affirmation of the original decision. It is also not clear whether the continuing violation doctrine should apply in this case, or when Graham should have known she was the target of purported discrimination. Because I cannot resolve these issues at

7

this stage, there is no basis to grant UPS's motion to dismiss Graham's ADA claims.

B.

UPS also argues that Graham's claims of retaliation in violation of the ADA (Count III) and violation of ERISA (Count IV) are barred by Graham's failure to exhaust administrative remedies. UPS further argues that plaintiff must affirmatively plead that she has exhausted administrative remedies or allege that she was denied meaningful access to remedies or that attempts to exhaust were futile. That is not the standard, however. The exhaustion of administrative remedies is an affirmative defense. *Salas v. Wisconsin Dept. of Corr.*, No. 06-2483, -- F.3d –, 2007 WL 2048945, at *5 (7th Cir. July 18, 2007) ("Filing a timely charge with the EEOC is not a jurisdictional prerequisite to suit in federal court; rather, it is an affirmative defense akin to administrative exhaustion."). Affirmative defenses cannot form the basis to dismiss unless the plaintiff's complaint pleads the plaintiff out of court. *See, e.g. Tregenza*, 12 F.3d at 718-19.

To adequately exhaust her administrative remedies, the charges of Graham's complaint must be within the scope of the charges filed with the EEOC. *Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination,

8

and then seek judicial relief for different instances of discrimination."). Although a complaint need not be a "replica" of the claim described in the charge, there must be "'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir.2000) (quoting *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).

Here, consideration of Graham's complaint and the EEOC charge does not show that Graham has pled herself out of court. Graham's EEOC charge (attached as Exhibit B to UPS's motion to dismiss), checks the box for "retaliation" on the charging form. The specific charge states many of the same factual allegations as contained in the complaint, and alleges that Graham told her employer of her disability and was terminated "due to my disability and/or because my employer regarded me as being disabled." Given that Graham checked the retaliation box in her EEOC charge and alleged that she was terminated due to her disability, a claim that Graham's discharge was in retaliation for opposing a practice made unlawful by the ADA is reasonably related to her EEOC charges, or at least could reasonably be expected to grow out of an EEOC investigation of the allegations contained in the EEOC charge.

9

In addition, there is no basis to dismiss Graham's ERISA claim for failure to exhaust her administrative remedies. As under the ADA, exhaustion of administrative remedies under ERISA is an affirmative defense. *Nauman v. Abbott Labs.*, No. 04 C 7199, 2005 WL 1139480, at *2 (N.D. Ill. Apr. 27, 2005) (citing *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000); *Moore v. ABB Power T & D Co., Inc.*, 2000 WL 1902185 (S.D. Ind. 2000)). Graham's complaint alleges that UPS terminated Graham in order to deprive her of continued participation in its employee welfare, pension and health benefit programs. There is nothing on the face of her complaint showing that she failed to exhaust her administrative remedies, or that she was required to do so. For these reasons, I deny UPS's motion to dismiss.

IV.

UPS has also filed a motion to transfer this case to the Western Division of the Northern District of Illinois, arguing that transfer would be most convenient to the parties and would allow for the most efficient judicial administration of this matter. I find that UPS has not met its burden under 28 U.S.C. § 1404(a) and deny this motion.

A.

This court may transfer venue to another division for reasons of convenience when it is "in the interest of justice." 28 U.S.C. § 1404(a). UPS must show that (1) venue is proper in this

division; (2) venue is proper in the transferee division; (3) the transferee division is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice. *Bryant v. ITT Corp.*, 48 F. Supp 2d. 829, 832 (N.D. Ill. 1999). In ruling on a motion to transfer, a district court must consider these statutory factors "in light of all the circumstances of the case." *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (internal citations omitted). The relative weight to afford each of these factors is left to the district court's discretion; § 1404(a) is silent on this issue. *See id.* at 219 n.3. The weighing of the relevant factors "involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219; *see also N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 648 n.3 (7th Cir. 1998) (internal citation omitted); *see also Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (noting that the remedial purpose of § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"). As the movant, UPS bears the burden of establishing that the transferee forum is clearly more convenient. *Coffey*, 796 F.2d at 219.

Since the Northern District has no divisional venue requirement, this case could have originally been filed in either division of the Northern District; venue is proper in the Northern District since it is undisputed that UPS does business within the

11

district. *See* 28 U.S.C. § 1391(c). UPS and Graham do dispute whether the Western Division is a more convenient venue and whether transfer would be in the interests of justice.

B.

In determining whether a forum is more convenient and whether transfer would be in the interest of justice, I must consider the private interests of the parties as well as the public interest of the court. *N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D. Ill. 1995). The factors relevant to the parties' private interests include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; and (4) the convenience of the witnesses. *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995). The factors relevant to the public interest of the court include the court's familiarity with the applicable law and concerns relating to the efficient administration of justice. *Id.* at 1056. The burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another. *Fink v. Declassis*, 738 F. Supp. 1195, 1198 (N.D. Ill. 1990).

1. Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995).

12

Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (internal citations omitted). Here, although Graham's choice of forum was the Eastern Division, she alleges in her complaint that she currently lives in Rockford, Illinois, in the Western Division. Therefore, her choice of forum is entitled to less deference.

2. Situs of Material Events

I must also consider the situs of the material events giving rise to Graham's claims. Graham's claims focus on actions that her employer took against her. Although Graham's complaint does not indicate where she was employed with UPS, her EEOC charge avers that she worked at a UPS facility in Rockford. There are no allegations that any material events took place in the Eastern Division, but some that the Western Division was the situs of at least some of the material events.[2] Although Graham contends that the ultimate UPS decisionmaker might not have made the decision to terminate her in the Eastern Division, there is no evidence before

---

[2]Some courts have also considered the "relative ease of access to sources of proof" and the "cost of securing witnesses" as factors in the transfer analysis. *See, e.g.*, *Chicago, Rock Island & Pac. R.R. Co.*, 220 F.2d at 303. UPS has provided some argument about witnesses they would call that reside in Rockford or elsewhere in the Western Division, but the only non-party witness UPS has specifically identified is Graham's physician. UPS has not identified any evidence it will seek in the Western Division.

me about where this decision was made. This factor weighs in favor of transfer.

### 3. Convenience of the Parties

The convenience of the parties is another factor I must consider. UPS argues that the Western Division is more convenient for the parties since Graham resides in Rockford and many of the relevant defendant party witnesses also reside in Rockford; Graham herself obviously believes the Eastern Division is most convenient since this is where she has chosen to bring her suit. Transfer is not appropriate where it would merely shift inconvenience from one party to another. *See, e.g.*, *Medi USA, L.P. v. Jobst Inst., Inc.*, 791 F. Supp. 208, 211 (N.D. Ill. 1992). This factor does not weigh significantly in favor of transfer.

### 4. Convenience of the Witnesses

I also consider the convenience of potential witnesses. In assessing inconvenience to potential witnesses, I must look beyond the number of witnesses to be called and examine the nature and quality of the witnesses' testimony with respect to the issues in the case. *Vandeveld*, 877 F. Supp. at 1168. As the party seeking transfer UPS must clearly specify key witnesses to be called and make a general statement as to their testimony. *Id.*

Here, UPS has identified several witnesses, including Graham's physician, and has generally contended that other UPS employees at the Rockford location are witnesses, although it has not identified

14

any UPS employees by name other than the UPS Workforce Planning Manager who is located in Addison, Illinois, in the Eastern Division. The convenience to party witnesses is not as significant as the convenience to non-party witnesses. *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp 2d. 1003, 1007 (N.D. Ill. 2007). In addition, UPS has not provided a sworn affidavit or any evidence other than its argument that these witnesses are necessary, and has not explained what the substance of their testimony would be. This is insufficient to meet UPS's burden, *Midwest Precision Servs. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983) (internal citation omitted), so I find this factor weighs against transfer.

C.

In addition to considering convenience, I must also consider the interest of justice. Factors relevant to the interest of justice include the transferor and transferee courts' familiarity with the applicable law, and the effect of transfer on the efficient administration of justice. *Coll. Craft Cos.*, 889 F. Supp. at 1056; *see also Schwartz v. Nat'l Van Lines, Inc.*, 317 F. Supp 2d. 829, 837 (N.D. Ill. 2004). Both divisions of the Northern District are equally familiar with the federal law, so the relevant question is the effect of transfer on the efficient administration of justice.

UPS makes no additional arguments that transfer is in the interest of justice other than to point out that discovery has not

commenced so that transfer would not delay the proceedings, and that the residents of the Western Division have a greater interest in the outcome of the case.  In this respect, this factor might weigh slightly in favor of transfer.  However, since discovery has not commenced it is no less efficient to keep the case here.  The interests of justice do not weigh heavily in favor of transfer.

D.

On balance, I find that UPS has not met its burden to show that these factors weigh in favor of transfer.  Therefore, I deny UPS's motion to transfer.

V.

For the above reasons, I deny UPS's motion to dismiss and its motion to transfer.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: October 1, 2007